## MOREHOUSE v. COTHEAL.

1. If lands are devised to W. and her heirs forever, and in case she die *without leaving lawful issue*, then the reversion to R. and H. and their heirs forever, this is an indefinite failure of issue, and the devise over void as an executory devise, and W. takes an estate tail by implication at common law.

2. By statute of New Jersey, all estates tail at commonlaw are changed into an estate for life in the first taker, with remainder in child or children of first taker.

3. When a will is stated in pleading as part of title to real estate, it must be shown by averment that it was executed in pursuance of the requirements of the statute.

This was an action of waste upon the statute of New Jersey. (*Rev. Laws* 209, *Rev. Stat.* 122.) The defendants demurred to the count of the plaintiffs which is as follows :

County of Middlesex, *ss.* Henry Cotheal and David Cotheal were summoned to answer Virginia W. Morehouse, Josephine B. Morehouse and Elizabeth Morehouse of a plea wherefore— (whereas by the statute of New Jersey passed March 17, 1795, it is provided that "no tenant for life, or years, or for any other term shall, during the term, make or suffer any waste, sale or destruction of houses, gardens, orchards, lands, or woods, or anything belonging to the tenements demised, without special license in writing making mention that he may do it ")—the same Henry Cotheal and David Cotheal in woods and lands in the town of South Amboy, County of Middlesex, and State of New Jersey, which they held for term of the lives of Sarah Ann and Andrew K. Morehouse (in the demesne of the late Elizabeth Wilmurt) on the assignment of the said Sarah Ann and Andrew K. Morehouse (whereof the said Sarah Ann Morehouse held of the late Elizabeth Wilmurt who the same demised to the said Sarah Ann for the same term before her marriage with the same Andrew K. Morehouse, whom the same held by the statute of N. Jersey in such case made and provided for the same term on the same demise as tenant by the courtesy initiate, of the same Elizabeth Wilmurt) have made waste, sale and destruction to the disinheritance of the said Virginia, Josephine and Elizabeth, against the provisions of the statute

aforesaid. And whereupon the said Virginia, Josephine and Elizabeth, by Jeremiah W. Blydenburgh, their guardian, to prosecute the suit, say : That whereas the late Elizabeth Wilmurt of the town and county and state aforesaid, widow, was on March 6th, 1825, seized of one messuage, one hundred and six acres of land with the appurtenances in the same town, county and state in her own demesne as of fee and of right, and being so thereof seized, the said Elizabeth Wilmurt, on, &c. at, &c. made her last will and testament in writing, and by the same will gave, devised, and bequeathed to her daughter Sarah Ann Wilmurt and her heirs forever, the same lands and tenements with the appurtenances. And by the same will further gave to Sarah Ann, Rose, and Elizabeth W. Heyer, and their heirs, and each of their heirs forever, the reversion of the same lands and tenements, with the appurtenances, in case her daughter Sarah Ann Wilmurt, should depart this life without leaving lawful issue, and having so made her last will and testament afterward, but before the —— day of May, 1826, at, &c. died seized of the same lands and tenements with the appurtenances. And the State of New Jersey by an act regulating descents, passed June 18, 1820, (*Rev. Laws* 774,) among other things enacted, that from and after the passing of that act, when any conveyance shall be made whereby the grantee or devisee shall become seized in law or equity of such estate in any lands or tenements as under the statute of the thirteenth of *Edward I*, (called the statute of entails,) could have been held an estate in fee tail, every such conveyance or devise shall vest an estate for life only in such grantee or devisee who shall possess and have the same power and right in such premises and no other, as a tenant for life thereof would have by law, and upon the death of such grantee or devisee, the said lands and tenements shall go to, and be vested in the children of such grantee or devisee, equally to be divided between them as tenants in common in fee, but if there be only one child, then to that one‚in fee; and if any child be dead, the part which would have come to him or her, shall go to his or her issue in like manner. *Provided* the widow of any such grantee or devisee shall have her dower in the premises in like manner as if the said grantee or devisee had

died seized thereof in fee simple. *And provided,* where any person shall marry a woman being a grantee or devisee, and seized of such estate, the said husband, after the death of his said wife, shall have his curtesy in the said lands and tenements, if there be issue of the marriage, in like manner as if the said wife had died seized of an estate of inheritance in fee tail of the premises.

And after the death of the said Elizabeth Wilmurt, and the admission of her said last will to probate, her daughter Sarah Ann Wilmurt, who is the same S. A. W. aforesaid, into the tenements with the appurtenances entered, and was thereof seized in her demesne as of free tenement for term of her own life, by virtue of the testament and the statute aforesaid. And being so seized thereof, the same Sarah Ann Wilmurt on 10th October, 1828, at the city, county, and State of New York, intermarried with the same Andrew K. Morehouse, who thereupon in right of his said wife became jointly seized of the tenements with the appurtenances in the demesne of the said Elizabeth Wilmurt, as of free tenement for the term of his life, if issue he should have by such marriage; and being so seized the same Andrew K., and Sarah Ann Morehouse, afterwards at the city, county, and state of New York, in the year 1829, the body of the said Sarah Ann Morehouse, (who was formerly Wilmurt,) was delivered of living lawful issue, which issue is the same Virginia W. Morehouse now here in court, who thus upon her birth became seized of the same lands and tenements, with the appurtenances, in vested remainder, in fee and of right, subject only to the like seizin in common of afterborn children of the same mother, by virtue of the testament and the statute aforesaid.

And afterwards, on July 14, 1830, the same Andrew K. Morehouse and Sarah Ann Morehouse by a certain deed or instrument in writing, sealed with their seals, conveyed to the said Henry Cotheal and David Cotheal, all the right, title, and interest to one undivided moiety of the said lands and tenements, with the appurtenances, by virtue whereof the said Henry Cotheal and David Cotheal, entered into and upon the said premises with the appurtenances, and become thereof seized as of

free tenement, in common with the said Andrew K. and Sarah Ann Morehouse, of one undivided moiety of the said tenements with the appurtenances, for the lives of the said Andrew K. and Sarah Ann Morehouse (late in the demesne of the said Elizabeth Wilmurt) as of right under the testament, statute, and conveyance aforesaid. And afterwards, to wit, October 19, 1831, by virtue of a deed from Andrew K. Snowhill, then Sheriff of Middlesex county, New Jersey, the same Henry Cotheal and David Cotheal became seised of all the right, title and interest of the said Andrew K. Morehouse to the same lands and tenements with the appurtenances, and this same Virginia W. Morehouse was at the time seised of a vested remainder of the same lands and tenements with the appurtenances as of fee and of right, subject only to the like seisin in common of afterborn issue of the same mother in vested remainder in fee and of right.

Yet the said Henry Cotheal and David Cotheal contriving and unjustly intending to injure, prejudice, and aggrieve her the said Virginia W., and the afterborn issue of her mother, if such there should be, in their estate in remainder, in said lands and tenements with the appurtenances, while the same were in the possession of the said Henry and David Cotheal, as tenants for the lives of the said Andrew K. and Sarah Ann Morehouse, under the testament, statute, and conveyance aforesaid, to wit, on the said 14th July, 1830, and at divers other days and times between that day and the eighth day of November, 1836, did cut, sever, and absolutely carry away from the said lands and tenements with the appurtenances, divers trees, to wit, one hundred walnut trees, one hundred chestnut trees one hundred oaks, and one hundred other trees, then standing, growing and being upon the said lands and tenements with the appurtenances of great value, to wit, of the value of five hundred dollars, and converted and disposed of the same to their own use, and also dug up the soil of the said lands and tenements, with the appurtenances, and carried away therefrom and converted to their own use five hundred loads of clay and five hundred loads of earth from the soil of the said premises, and being at that time part of the premises demised of the value of five hundred dollars, to the dishersion of the said Virginia W. and the after

born issue of her mother and against the provision of the statute aforesaid.

And at the city, county, and state of New York, in the year 1832, the body of the said S. A. M. (who was formerly Wilmurt) was delivered of other living lawful issue, which other lawful issue is the same Josephine B. Morehouse, also now here in court, and afterwards at the county of Hamilton and state of New York, in the year 1835, the body of the same S. A. M. (formerly W.) was again delivered of yet other living and lawful issue, which last mentioned issue is the same Elizabeth Morehouse now here in court, which said Josephine and Elizabeth Morehouse at their several births became seised in common with the other lawful issue of the same mother in vested remainder of the same lands and tenements with the appurtenances in fee and of right, by virtue of the testament and statute as aforesaid, and the said Virginia W., Josephine B., and Elizabeth Morehouse remain as yet solely seised of the same lands and tenements with the appurtenances in vested remainder, whereupon by means of which said several grievances committed by the said Henry Cotheal and David Cotheal, above mentioned, the said Virginia W., Josephine B., and Elizabeth Morehouse say they are the worse in their estate in remainder, and have sustained damage to the amount of one thousand dollars, and therefore they bring suit.

Argued before the CHIEF JUSTICE and NEVIUS and CARPENTER, JJ.

*Leupp*, for defendant, in support of the demurrer.

1. The supposed will does not appear to have been so executed as to pass real estate.

2. The plaintiff's title is not sufficiently averred. The will of E. Wilmurt gives a fee simple to the first devisee in the event of her having issue. The devisee had issue who are the plaintiffs in the suit. So long as the first devisee has issue it is a fee simple, only to be defeated by a definite failure of issue. The effort will be to show an estate tail, and that the first taker, under the statute, had only a life estate. *3. B. C.* 227; *Fosdick*

v. *Cornell,* 1 *John.* 440 ; *Jackson* v. *Blanshan,* 3 *Ib.* 2, 299 ; 2 *Den* v. *Allaire, Spenc.* 6, 13.

*Blydenburgh,* (of N. Y.) contra.

GREEN, C. J. The first point raised by the demurrer in this cause is, that it is not sufficiently shewn by the declaration that the plaintiffs are entitled to any estate in the premises, wherein the waste is charged to have been committed.

The plaintiffs claim title under the will of Elizabeth Wilmurt, and the validity of the objection depends upon the true construction of that will. The declaration states that Elizabeth Wilmurt, by her last will and testament in writing, devised the lands and tenements in question, with the appurtenances, to her daughter, Sarah Ann Wilmurt, and her heirs forever : and by the same will further gave to Sarah Ann, Rose and Elizabeth W. Heyer, and their and each of their heirs forever, the reversion of the same lands and tenements, in case her daughter, Sarah Ann Wilmurt, should depart this life without leaving lawful issue. By the terms of this devise it is clear that at common law, Sarah Ann Wilmurt would have taken an estate tail in the devised premises. No rule of construction is better settled than that a devise in fee with a limitation over upon an indefinite failure of issue, constitutes an estate in fee tail. And no rule has been more frequently discussed and more repeatedly decided, both in England and America, than that under the terms of the devise, the limitation over is upon an indefinite failure of issue. The authorities upon this point are believed to be uniform. This construction is of course liable to be defeated, if an intention appears upon the face of the will to limit the failure of issue to the death of the first taker. There is a class of cases referred to upon the argument where the use of the term " survivor " or " surviving " has been held to indicate such intent on the part of the testator ; and consequently, to convert the estate devised from a fee tail, into a fee simple conditional, with a limitation over by way of executory devise.

There is nothing, however, upon the face of the present will

to indicate such an intent on the part of the testator. *The devise* over is clearly upon an indefinite failure of issue, and vests therefore, in Sarah Ann Wilmurt at the common law, an estate tail. By operation of the 11th section of the act directing the descent of real estates, (*R. Stat.* 241) (*a*) Sarah Ann Wilmurt, the first devisee in tail, took an estate for life only, with remainder over in fee to her children, as tenants in common.

The declaration, therefore, shews that the plaintiffs, who are the children of Sarah Ann Wilmurt, have an estate in the devised premises. Upon this ground the demurrer cannot be sustained.

The second point relied on, in support of the demurrer is that it is not averred in the declaration, that the will, under which the plaintiffs claim, was executed with the formalities required to constitute a valid devise of real estate.

The declaration avers that the will was in writing, but not that it was signed and published by the testator, in the presence of three subscribing witnesses.

The authorities are very generally agreed, that in pleading a will, it must be pleaded to be in writing, pursuant to the statute of wills, 32 *Hen.* 8—2 *Salk.* 519, *pl.* 17; *Birch* v. *Bellamy,* 12 *Mod.* 540; 1 *Saund.* 276, *c. note;* 2 *Bac. ab. "Stat."* *L.* 3; *Stephens Plead.* 332; *Gould's Plead.* iv. § 47. And both the early and the later precedents conform to this requirement.

The rule is stated to be, that when a statute makes writing necessary to a common law matter, where writing was not necessary at common law, you need not plead the thing to be in writing: but where a thing is originally made by statute, and required to be in writing, you must plead it, *with all the circumstances required by the act.*

If the principle be sound, (and I do not find it any where questioned,) it would seem to be equally necessary to state all the circumstances required by the *original act,* not only—but all the circumstances required by *subsequent acts* upon the same subject.

(*a*) Section 2d of Act of June 18, 1820; *R. L.* 774; *El. Dig. p.* 130.

We find it accordingly laid down, that where the power to do an act was originally granted by a statute, it must be shewn in pleading that the act was done according to the direction of the statute, and of every subsequent statute, relative to the subject. If a will of lands be pleaded, it must be shewn that the will is in writing, as by the 32d *Hen.* 8 *Ch.* 1, (by which power to make such will was first given) is directed. And it must likewise be shewn that the requisites made necessary to the validity of such will by the 29th *Car.* 2 *Cap.* 3, have been complied with.  *Bac. ab. "Statutes" L.* 3.

" The same reasons," (says Judge Gould,) " which require a devise to be pleaded as being in writing, render it equally necessary to allege an observance of all the other requisites prescribed by statute as essential to its validity." These requisites being expressly made as indispensable to the validity of such instruments as writing itself. And hence, he who now pleads a devise, must aver not only that it is *in writing,* as provided by the statute of wills, (32 *Hen.* 8,) but also that it is *signed and attested* according to the provision of the statute of *frauds,* (29 *Car. II c.* 2 § 5.) For this latter enactment, relating to the same subject matter as that of the statute of wills, and being in effect only supplementary to it, is to be taken notice of in pleading, as if it formed a part of the elder statute.  *Gould's Pl. Chap. iv,* § 48.

These authorities, standing uncontradicted, would seem to be decisive of the question, and yet it is worthy of notice that with a single exception, to be found in 2d *Chitty,* 591, the precedents in the English books simply aver the will to be in writing, without mention of the requisites prescribed by the statute of Charles.  1 *Saund.* 250 ; 2 *Saund.* 234 ; 1 *Lilly's Ent.* 207 ; 3 *Went. Pl.* 492 ; 3 *Chitty Pl.* 1361.

The earlier and more authorative precedents, to be found in Saunders, are prior in point of time to the statute of frauds, and of course shed no light directly upon the question ; and yet it is remarkable that so distinguished and accurate a pleader as Sergeant Williams, in his notes to those precedents, written after the enactment of the statute of frauds, should have made

no allusion whatever to the important changes introduced by this statute, if he regarded the statute as rendering the averment necessary. His statement that it is necessary to aver that the will is in writing, as required by the statute of wills, and his entire silence in respect to the requisites of the statute of frauds, would seem to be indicative of his opinion upon the point.

In *Everard* v. *Paterson*, 8 *Taunt*. 628, one of the counsel is reported as saying, in argument, that " though in an anonymous case, it was once said that in pleading a will of land, it was necessary to show it was executed according to the statute, because a will is wholly the creature of a statute, yet it is unnecessary so to do, and the practice is universally contrary." " To which," (the report adds,) " the court assented."

In a note to 2d *Chitty's Pl.* 591, it is said that it is not necessary in pleading a will to state that the solemnities required by the statutes against frauds have been observed, and the case of *Davis* v. *Reeves, Vern. & Scriv.* 497, is cited in support of the position.

Whatever doubts may be created by this conflict of opinion as to the proper practice under the English statutes, none I think can exist under our act. In this State, the same statute and the same clause of the statute, which requires the will to be *in writing*, requires also that it should be signed and published in the presence of three subscribing witnesses. If it be necessary to aver in pleading the existence of the one requisite, it must be equally essential to aver the existence of the other. Both authority and precedent concur in this conclusion, that it is essential in good pleading to aver the will of real estate to be in writing, and I am of opinion that it is equally essential to aver that the will was signed and published by the testator, in the presence of three subscribing witnesses.

If this were a new question I should be disposed to hold the declaration good, and adopting the views of an eminent legal tribunal upon an analogous point to say, that it is enough in pleading to aver that the land was devised by will, without averring that the will was executed in pursuance of the require-

ments of the statute, because it could not be such a will as to pass the title, unless it conformed to all the requirements of the statute. *Elliott* v. *Cowper*, 1 *Stran.* 609.

But I cannot disregard the uniform practice of 200 years, and sitting here I do not feel myself at liberty to say anything calculated to disturb it.

Upon this point I am of opinion that judgment must be for the demurrant.

CARPENTER, J. The plaintiffs set out in the count their title, which they derive under the will of Elizabeth Wilmurt, deceased. As stated in the count, she devised the premises in question " to her daughter, Sarah Ann Wilmurt, and her heirs forever "—and by the same will she " further gave to S. A. R. and E. W. H. and their heirs &c. forever, the reversion of the same lands, &c., in case her daughter, S. A. W., should depart this life without leaving lawful issue." The case set up on the part of the plaintiffs is, that by this devise the daughter took an estate which under the statute *de donis* would be an estate tail, but that under the act of 1820, (*Rev. Laws* 774,) it became in her an estate for life only, with a vested remainder to her children, the plaintiffs in this action. On the part of the defendants, who have demurred to the count, it is contended that this devise conveys an estate in fee to the first taker, only liable to be defeated by her dying without issue, with a remainder over in such case by way of executory devise. If held to be a defeasible fee in the daughter, the plaintiffs have no vested estate of inheritance, and cannot maintain the present action.

Where the devise over depends on a definite failure of issue, an estate in fee with executory devise is created ; but where the devise is made to depend on an indefinite failure of issue, a contingent remainder, limited on an estate tail, is created. A definite failure of issue is when a precise time is fixed by the will for the failure of issue, as in case of a devise to A., with a limitation over, if he dies without lawful issue *living at the time of his death*. An indefinite failure means the period when the descendants of the first taker shall become extinct, without

reference to any particular period. Upon a devise to the first taker by words which standing alone would carry a fee, a limitation over on a failure of issue has been held by implication to cut down the estate given to a fee tail; the words *dying without issue,* or *without leaving lawful issue,* and the like, when applied to real estate, being held to import a definite failure of issue. 4 *Kent* 274, (*5th Ed.*); 2 *Pow. Dev. by Jarman,* 564, (*Law Lib. Ed.*); 2 *Jarm. Wills* 417, 427.

Such is still the construction where there are no expressions in the will controlling the legal meaning of the words, and pointing to a definite rather to an indefinite failure of issue. The rule is the same in this country as in England, although here, as has been said, it seems to be not quite so stubborn and inflexible in its nature, and more easily turned aside by the force of slight additional expressions in the will. The cases cited by the defendants' counsel belong to a series of cases which have established in this country, contrary to the weight of authority in England, that the word " *survivor,*" and other words of similar import, when used in connection with the words " *dying without issue,*" take the case out of the general rule and give the first devisee a fee simple, determinable by his death without issue then living. The doctrine of these cases, although much questioned, has been fully adopted in this state, by the decision in *Den* v. *Allaire.* But in all these cases, the general rule was fully admitted. It was said by WHITEHEAD, J. in the case last cited, (*Spenc.* 9,) that the words *dying without issue,* independent of other expressions to control their meaning, had uniformly received a construction, which it would endanger titles to real estate to call in question. See *Den* v. *Schenck,* 3 *Halst.* 29; *Den* v. *Howell, Spenc.* 411, 415. It is scarcely necessary to say so much of a rule so unquestionable. In this case there is nothing to control the technical meaning of the words used. The devisee, under the statute *de donis,* would give an estate tail to the daughter, but by our act it is cut down to an estate for life in the first taker, with remainder in fee to her children.

The other objection raised by the demurrer in this case is,

that the formalities necessary to pass lands by devise are not averred. It is said that in pleading a devise of lands, it must be alleged to have been made in *writing*, because not valid at common law. 1 *Saund.* 276 *note;* *Steph. Pl.* 313; *Anon. Salk.* 519. It seems upon the reasons given for the rule to be supposed that it is necessary, not only to aver that it is writing, as provided by the statute of wills, (32 *Hen.* 8 ;) but also that it is signed and attested according to the provisions of the statute of frauds; 29 *Car.* 2 c. 3, § 5; *Gould. Pl. iv.* §§ 48, 49, *p.* 194. A distinction, however, has been taken between a declaration and plea, in the latter greater certainty being necessary than in the former. In one case it has been held that in a declaration it is not necessary under the statute of frauds, to show the thing to be in writing, but in the latter it must be so pleaded. *Case* v. *Barber, T. Raym.* 450; *Steph. P.* 375. And see *Davis* v. *Reeves, Vern. & Scriven.* 497, where it was held that it was sufficient to state, in pleading a will, that it had been executed in writing.

But whatever may be the rule in England, for the reasons given by the Chief Justice, I concur in the opinion that a title by devise in this State must be shown in pleading, to be by will executed according to the requirements of the statute, and unless the demandant shall apply for leave to amend, that judgment should be for the demurrant.

NEVIUS, J. concurred.

SEE 2 *Zab.* 430; *Id.* 521.
CITED *in Moore* v. *Rake,* 2 *Dutch.* 581–585.